Nicholson, C. J.,
delivered the opinion of the Court.
The bill in this cause was filed in the Chancery Court at Newport, to reach, by attachment, the value of a stock of goods in the possession of defendant, ' M.-McNabb, and to subject the same to a debt due the complainants by defendant, G. R. McNabb. The goods had belonged to G. R. McNabb, and had been transferred by him to M. McNabb. The main question in the case,' is, whether this transfer of the goods was fraudulent. as to the creditors of G. R. McNabb.
*704 The bill alleges that the defendant, G. R. McNabb, is justly indebted to complainants, who are merchants in Baltimore, in the sum of $4,398, for goods sold to him in 1866, to be used in his mercantile house at Columbia, S. C.; that during the last four months, before the filing of the bill, which took place on the 17th of Jan., 1867, defendant, M. McNabb, the father of said George R., and who was residing in Cocke county, Tenn., sent his wagons through to South Carolina, and brought to said county a lot of goods, and was engaged in merchandizing on them; that the goods were received from said George R. McNabb, and that they were part of his stock at Columbia, S. C., and possibly a part of the goods sold to him by complainants; * that nothing was paid for said goods by M. McNabb, but that this was a fraudulent device, adopted to save this much of the stock at Columbia, S. C., from the claims of creditors. They do not know the amount the goods so brought, but suppose it was not less than $3,000 in value. They allege, upon information, that defendant, George R., was on the eve of bankruptcy, if not absolutely insolvent, at the time of filing the bill.
The defendants are required to answer specifically the allegations of the bill, and then they are required to answer specific interrogatories — “let them answer, positively, what amount of goods were received by said M. McNabb from said George R., and whether anything was paid him therefor, and if so, when, where, and in what manner.” The bill was sworn to by an agent of complainants.
The defendants answer on oath, separately. George R. *705 McNabb answers, that .about the 1st of September, 1866, he bought the goods of complainants, as charged,-on a credit of four months; that after the goods were received in Columbia, S. C., a great and sudden decline took place in the price of goods, by which he suffered great loss, and that soon afterwards — about the 25th of December, 1866, he made an assignment for the benefit of all his creditors, of the proceeds whereof complainants received their ■pro rata share.
Defendant answers further, that his father, defendant M. McNabb, and himself, were indebted, at the beginning of the war, in about $3,600, to various merchants in Baltimore, from whom they bought goods as partners, in Cocke county, Tenn.; that, by the operations of the war, the assets of the firm became unavailable or worthless, and that the debts remained unpaid; and that he, being absent from the State, the whole of said indebtedness had to be met and discharged by his father, which left him indebted to him in the sum of about $2,500, estimating, the indebtedness and interest at $5,000. He answers, that after the war he went into the mercantile business at Abbeville, S. C., and was successful; that about the 1st of July, 1866, being entirely solvent, owing no debts, except the one aforesaid to his father, and having a remnant of goods at Abbeville, and being desirous to save his father harmless, and to pay him the said amount of $2,500, due and justly owing to him, he proposed to his father to transfer and sell to him the said remnant of goods, in payment of said amount; that his father at first refused, but upon his assuring him that it would not interfere with his prospects in busi *706 ness, his father finally agreed to receive the goods, as proposed. He slates, that about the 1st of October, 1866, he invoiced to defendant, M. MeNhbb, by railroad, to Greenville, S. C., goods amounting to $2,890, said invoices being stamped and receipted in full; that the greater portion of said goods were the stock of remnants before mentioned, and the balance from the stock subsequently purchased; about the 1st of September, 1866, but that none of the goods bought of complainants were included in the invoice-
.Defendant denies, positively and absolutely, that the said transfer to his father was fraudulent, but avers, positively and absolutely, that it was bona fide, honest, and alone for the payment of his indebtedness, as aforesaid, and that it was so received and receipted for by his father. Defendant, McNabb, answers; that after Geo. R. had done a prosperous business at Abbeville, S. C., he wound up there, and went into business in Columbia, S. C., and failed, and made an assignment for the benefit of his creditors; these things he states on information. He says that he had but one transaction with his son, and that was whilst his business was prosperous, and when he was not embarrassed, and had paid for all the goods sold to defendant; and that this transaction was fair, open, bona fide, and for a valid consideration. After detailing the failure of the business in which defendants were engaged in Cocke County, Tennessee, before the war, defendant says, the amount of their indebtedness was about $3,600; that before the war was fairly over, their creditors sued them in the Federal Court, and obtained judgments against him *707 alone; that about tbe 1st of July, 1866, the said Geo. R. proposed to let him have a remnant of goods he had at Abbeville, to assist him in paying off their Baltimore debts, and proposed shipping them through, by railroad, to Greenville, S. C.; that he refused, until assured by George R. that he was not embarrassed, and could spare the goods without detriment to his business; with this assurance, and agreement that the proceeds should be applied to. the said George R’s liabilities, to their Baltimore creditors, and the amount defendant had paid for him, toward their indebtedness, he agreed to receive the goods; that in pursuance to these stipulations, the said George R. sent the goods to Green-ville, S. C., where defendant received them; that the said George R. being then solvent, sold and transferred all of said goods to him, for the express purpose of enabling him to pay off said debt, and that as soon as they were received, he began the sale and application of the proceeds to said debts, until stopped by the injunction. He denies all the allegations of fraud.
There was but one deposition in the case. This witness says he went to Columbia, South Carolina, in January, 1867, took all the assets' of George R. Mc-Nabb, carried them to Baltimore, and there disposed of them and distributed the proceeds, pro rata, and that the share received by complainants was $733; that he examined the books of George R. McNabb, after the merchandise had been shipped to Tennessee, and they contained no record of goods debited to M. McNabb, whilst they professed to contain a record of all the goods that had been sold on account of George R. McNabb; *708 . that the debts due by George R. MeNabb, in Baltimore, were mainly created between the 20th of August, 1866, and the 10th of October, 1866, and amounted to over $53,000.
The first question for our determination, arises upon the allegations and interrogatories in the bill, and the responses thereto, in the answers. Are the matters stated in the answers responsive to the allegations and interrogatories, or are they merely in avoidance? The allegations are, that defendant, M. MeNabb, received the goods from defendant, George . R. MeNabb, and that nothing was paid therefor; and the special interrogatories are: “Let them answer positively what amount of goods was received by said M. MeNabb, from said George R. MeNabb, and whether anything was paid therefor; and if so, when, where and in what manner?” George R. MeNabb says, in answer: About the 1st of July, 1866, he proposed to transfer, and defendant, M. MeNabb, agreed to receive, the goods at Abbeville, to the amount of $2,500, in payment of that amount due and justly owing to him; and that about the 1st of October, 1866, he invoiced and sent the goods to Green- . ville, South Carolina, for M. MeNabb. Defendant, M. MeNabb, answers, that about the 1st of July, 1866, defendant, George R. MeNabb, proposed to let him have the remnant of goods at Abbeville, South Carolina, to .assist him in paying off their Baltimore debts, and to ship them by railroad to Greenville, South Carolina; ..that, in pursuance of the agreement, that the proceeds should be. applied to the said George R. McNabb’s liabilities to their Baltimore creditors, and the amount de *709 fendant, M. McHabb, bad paid for him toward their indebtedness, the goods were sent by George R. McNabb, to Greenville, South Carolina,' and received by defendant, M. MeNabb.
These answers are responsive to the interrogatories, “whether any thing was paid for the goods, and if so, when, where and in what manner?” and are, therefore, evidence for the defendants, and not merely matter in avoidance. 10 Yer., 105; 5 Hum., 446; 4 Cold., 292; 2 Daniel Ch. Pl. & Pr., 938, n. 2.
As there is no other evidence made by^ complainants, overthrowing the evidence of the defendants, we are bound to conclude that, about the 1st of July, 1866, an arrangement . was made between them by which 'the goods in controversy were transferred from George R. MoNabb to M. MclSTabb,' either in payment of the liability of the former to the latter, or as an indemnity against loss by reason of said liability. This arrangement was perfected about the 1st of October, 1866, when the goods were delivered. The title of defendant, M. McNabb, became thereby complete and valid as against the claim of complainants, unless the transfer was vitiated by fraud on the part of the defendants.
The allegation that the transfer was fraudulent is positively denied by the defendants, and this denial being responsive, becomes evidence for them of the fact. But the evidence is subject to be rebutted and overturned either by admissions and statements in the answer, or by witnesses. It is insisted for complainants that there are admissions and statements in the answer from which, in *710 connection with the proof, fraud may be deduced, notwithstanding the denials of the answers.
The first admission relied on is, that defendant, Geo. R., at the time of the transfer, was on the eve of bankruptcy, if not wholly insolvent. Complainants do not so charge in their bill; this charge in the bill refers to the date of its filing, July 17, 1867. Both defendants admit that Geo. R. was insolvent when the bill was filed, but say that he was unembarrassed and owed nothing on the 1st of July, 1866, when the contract for the transfer of the goods was made; that after the purchase of the goods in Baltimore, for his business house in Columbia, S. C., which purchases a.re shown to have been made between the 20th of August and the 10th of October, 1866, he became embarrassed by the sudden and great decline of the prices of goods, and that he made an assignment about the 25th of December, 1866. There was nothing indicating fraud in appropriating the remnant of goods at Abbeville, to the satisfaction of his old Baltimore debts, for which his father was jointly liable. The fact, that, shortly after making this transfer, he bought of complainants and others in Baltimore, over fifty thousand dollars worth of goods on a credit, may prove that he was a bold and rash speculator, and that the Baltimore merchants were either equally rash in extending to him credit to so large an amount, or that they concurred with him in believing that the speculation promised to be successful, but it does not satisfy us that defendants were guilty of fraud in the arrangements of July 1, 1866, as to the *711 remnant of goods at Abbeville; or tbat defendant, Geo. R., made the large purchase in Baltimore, with the fraudulent purpose of cheating complainants and his other creditors. Nor does the fact, proven by one witness, that the books of defendant, Geo. R, at Columbia, showed no entry of goods debited to defendant, McNabb, establish fraud. If the Abbeville goods were disposed of on the 1st of July, 1866, to McNabb, they constituted no part of the stock at Columbia, and therefore the failure to enter the transaction on the books at Columbia, tends as much to prove the genuineness of the transaction of July 1, 1866, as it does to show that the omission was fraudulent.
It follows, that, as complainants failed to sustain their allegations of fraud, they are in no condition to contest the title of defendant, M. McNabb, to the goods: Upon the whole view of the facts and the law, we are unable to concur in the conclusions of the Chancellor,, and therefore we reverse his decree, and dismiss the bill-with costs.